## MATTER OF LUNA

### In Visa Petition Proceedings

### A-24619710

### *Decided by Board April 26, 1983*

(1) New York will recognize, as a matter of comity, a divorce rendered in the Dominican Republic where the Dominican court's jurisdiction was based on the domicile of one of the parties.

(2) Henceforth, a pronouncement of a divorce for cause by an official of the Civil Registry of the Dominican Republic, unless irregular on its face, will be accepted as *prima facie* evidence of compliance with the time and notice requirements of Dominican divorce law.

ON BEHALF OF RESPONDENT:
Antonio C. Martinez, Esquire
324 West 14th Street
New York, New York 10014

ON BEHALF OF SERVICE:
Ronald LeFevre
Appellate Trial
Attorney

BY: Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The lawful permanent resident petitioner applied for visa preference classification for the beneficiary as her spouse under section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(2). In a decision dated July 13, 1982, the District Director denied the petition. The petitioner has appealed. The appeal will be sustained.

The petitioner is a 27-year-old female, a native and citizen of the Dominican Republic. She was admitted to the United States for permanent residence on December 29, 1974, at New York, New York. The beneficiary is a 27-year-old native and citizen of the Dominican Republic. The petitioner and beneficiary were married to each other in New York City on December 29, 1978. Both the petitioner and the beneficiary were previously married. To establish the legal termination of their prior marriages, the petitioner submitted copies of divorce decrees and pronouncements from the Dominican Republic purporting to terminate each of them.

The District Director denied the petition on the ground that the petitioner's marriage is invalid because the beneficiary's divorce in the Dominican Republic would not be recognized by the state of New York because the beneficiary did not appear in the proceedings before the

Dominican Court in person or through counsel, but that judgment was entered against him by default. The District Director relied upon our decision in *Matter of Rodriguez*, 15 I&N Dec. 227 (BIA 1975).

The District Director correctly noted that the validity of a marriage generally is determined according to the law of the place of celebration. *Matter of Gamero*, 14 I&N Dec. 674 (BIA 1974); *Matter of Levine*, 13 I&N Dec. 244 (BIA 1969); *Matter of P—*, 4 I&N Dec. 610 (BIA; A. G. 1952). Thus, the validity of the petitioner's present marriage to the beneficiary depends upon whether New York would recognize the Dominican divorce purporting to terminate the beneficiary's prior marriage.

The general rule is that a decree of divorce valid where rendered is valid everywhere and will be recognized either under the "full faith and credit" clause of the United States Constitution, or in the case of divorces rendered in foreign countries, under the principle of comity, provided that recognition would not contravene public policy. 27B C.J.S., *Divorce*, sections 326-333 (1959). A foreign court must have jurisdiction to render a valid decree, and the applicable tests of jurisdiction are ordinarily those of the United States, rather than of the divorcing country, and a divorce obtained in a foreign country will not normally be recognized as valid if neither of the spouses had a domicile in that country, even though domicile is not a requirement for jurisdiction under the divorcing country's laws. 24 Am.Jur.2d, *Divorce and Separation*, sections 964-65 (1966); Annot., 13 A.L.R.3d 1419 (1967).

The domicile of the parties has long been recognized as the primary, if not the exclusive, basis for the judicial power to grant a divorce. *See Williams* v. *North Carolina*, 317 U.S. 287 (1942); *Williams* v. *North Carolina*, 325 U.S. 226 (1945). New York recognizes divorces rendered in foreign countries based on domicile of one of the parties. *Sorensen* v. *Sorensen*, 219 App. Div. 344, 220 N.Y.S. 242 (1927); *Quintana* v. *Quintana*, 101 N.Y.S.2d 593 (1950); *see also* Annot., *supra*.

New York, unlike many other states in the United States, will recognize a divorce decree rendered in a foreign country not based on domicile of either of the parties provided there is some physical presence on the part of at least one party within the jurisdiction of the court rendering the divorce, and some type of appearance or submission to jurisdiction by the other party. *Rosenstiel* v. *Rosenstiel*, 16 N.Y.2d 64, 262 N.Y.S.2d 86 (1965), *cert. denied*, 383 U.S. 943, *cert. denied*, 384 U.S. 971 (1966); *see also Matter of Rodriguez*, *supra*; *Matter of Li Ganoza*, 15 I&N Dec. 593 (BIA 1976); *Matter of Moncayo*, 14 I&N Dec. 472 (BIA 1973).

With respect to the beneficiary's divorce, the record contains a decree of divorce entered on August 15, 1978, purporting to grant a divorce on grounds of incompatibility of character to Gisela Pena Hernandez

(plaintiff), "Dominican, of legal age, married, dressmaker, residing in Santiago . . . against her legitimate husband Mr. Leoncio Daria Luna Castro, personal circumstances unknown, who did not appear at the hearing in spite of having been legally summoned . . . ." The judgment further reflects that the parties were married in the municipality of Tenares on July 3, 1976. Thus, it is clear from the judgment that the beneficiary's divorce was based on the domicile of the plaintiff in that action. Therefore, the District Director was in error in relying upon *Matter of Rodriguez, supra,* which pertains only to divorces granted in foreign countries not based on domicile of the parties.

We now turn to the question whether the beneficiary's divorce was timely pronounced under Dominican law. Article 17 of the Dominican law of divorce, Law 1306-bis, Civil Code of the Dominican Republic, requires the spouse who obtains a divorce for cause to have the divorce pronounced and registered by an official of the Civil Registry within 2 months. Under Article 19 of that law, a plaintiff who fails to have the divorce pronounced and registered by an official of the Civil Registry loses the benefits of the divorce. Since 1976 we have examined Dominican divorces for compliance with the requirement for timely pronouncement. We have made our decisions based on the evidence submitted by petitioners (*Matter of Brantigan,* 11 I&N Dec. 493 (BIA 1966); *Matter of Annang,* 14 I&N Dec. 502 (BIA 1973)) and the law as provided by the United States Library of Congress. We have been frustrated in this endeavor by incomplete translations of the law (*Matter of Tagle,* 15 I&N Dec. 595 (BIA 1976)); inaccurate translations of the law (*Matter of Hann,* 18 I&N Dec. 59 (BIA 1981) and *Matter of Hann,* 18 I&N Dec. 196 (BIA 1982)); poor quality translations of official documents (*Matter of Lucero,* 16 I&N Dec. 674 (BIA 1979)); and piecemeal presentation of the various provisions of Dominican law pertaining to this issue. *Matter of Hann, supra; Matter of Zorrilla,* 18 I&N Dec. 378 (BIA 1983). The result has been frequent modification of precedent decisions based on the new information. Recently, we have held that the 2-month time period for pronouncement of a Dominican divorce for cause, referenced in *Articles 17 and 19,* begins to run from the expiration of the 2-month time allowed for appeal, which begins to run from the time the defendant is notified of the judgment. *Matter of Zorrilla, supra.* In other words, in order for such a divorce to be valid, it must be pronounced and registered between 61 and 120 days from the date the defendant is notified of the judgment of divorce.

The record in this case does not reflect the date the defendant was notified of the judgment. Therefore, we cannot determine the period within which the divorce must have been pronounced. Further, of approximately 100 cases presently pending before the Board which will turn on the validity of a Dominican divorce, none contains documents

establishing this date. While it is possible that all of these divorces are invalid because they were untimely pronounced, we doubt it because most of them were pronounced within 120 days from the date judgment was rendered, which would make it mathematically impossible for them to have been pronounced late under Article 19, even assuming the defendant was notified of the judgment on the day it was rendered. We think the explanation for the absence of the date of notification in all these cases is that the pronouncement of a divorce is generally accepted in the Dominican Republic as evidence of compliance with the time requirements for such pronouncements.

A translation provided to us by the Library of Congress reflects that Article 17 of the Dominican law of divorce provides:

> *Art. 17.* The spouse who obtained a divorce judgment issued by a court of last instance of a judgment which has become final, except if an appeal on cassation which suspends the effects of the judgment has been filed, is under the obligation to appear before the Official of the Civil Registry, within two months, in order to have the divorce pronounced and the judgment registered in the Office of the Civil Registry, provided the other party is summoned by the bailiff in order that he (she) may appear before the Official of the Civil Registry to hear the pronouncement of the divorce.
> *Para.* The Official of the Civil Registry shall not pronounce the divorce nor transcribe the judgment unless the formalities provided for in article 548 of the Code of Civil Procedure have been complied with and evidence that the other party was summoned to appear to hear the pronouncement act as provided above in this article is presented [to him]. The Official of the Civil Registry which pronounces a divorce without complying with the above provisions shall be subject to dismissal [from his employment] without prejudice to the civil liability that may exist.

Article 548 provides:

> *Art. 548.* Judgments declaring the suspension to an act of opposition, the cancellation of the registration of a mortgage, payments or anything that must be executed by a third party of against the latter, shall not be executable by said third parties of against them, even after the term of appeal is lapsed, unless the attorney of the party executing the judgment issues a certificate stating the date on which the defeated party was notified of the judgment, and upon issuance by the court clerk of a statement to the effect that the judgment of the court is neither opposed nor has been appealed.

The "Para." of Article 17 quoted above provides that the official of the Civil Registry shall not pronounce or transcribe a judgment of divorce unless there has been compliance with Article 548. In the context of Article 17, the "third party" referenced in Article 548 is the Official of the Civil Registry who is called upon to pronounce and register a divorce. Article 548 prohibits "execution" (pronouncement in this instance) by that official without proof of the date the defendant was notified of the judgment and a statement from the clerk of court to the effect that the judgment is not opposed and has not been appealed.

Thus, these two provisions combine to require that the Official of the Civil Registry have, before pronouncing a divorce, the evidence neces-

sary to determine compliance with the time and notice requirements for pronouncements of divorces. In view of his official position and the fact that the statute requires that he have the evidence, presumably he will not pronounce a divorce where that evidence does not establish compliance with the time and notice requirements of the law. Therefore, henceforth, we will accept a pronouncement of a divorce by an official of the Civil Registry, unless irregular on its face, as *prima facie* evidence of compliance with the time and notice requirements of Dominican divorce law. Of course it can be rebutted if the Service has evidence of failure to comply with these requirements.

In this case, the record reflects that the beneficiary's divorce was pronounced on November 21, 1978, 98 days from the time the judgment was rendered. The pronouncement is not irregular on its face, and there is no evidence of record which suggests that it was untimely. Therefore, we will accept it.

With respect to the petitioner's prior divorce, the record contains a judgment of divorce entered on February 18, 1976, granting Modesto Antonio Ramirez Lugo and Emma Ramona Fernandez Fabre a divorce on grounds of mutual consent. The judgment reflects that both spouses were Dominican and domiciled in Santiago, Dominican Republic. The judgment also reflects that their attorney appeared at the hearing in their behalf. Thus, the petitioner's mutual consent divorce was also one based on domicile. The record reflects that it was pronounced on March 4, 1976. *See Matter of Lucero*, 16 I&N Dec. 674 (BIA 1979). Therefore, we conclude that the petitioner's prior divorce would also be recognized, as a matter of comity, by the state of New York.

We have reviewed the file and see no other basis upon which the visa petition might properly have been denied. Accordingly, the appeal will be sustained and the visa petition will be approved.

**ORDER:** The appeal is sustained and the visa petition is approved.